IN THE CASE OF

UNITED STATES, Appellee

v.

Justin W. Erickson, Airman First Class
U.S. Air Force, Appellant

No. 04-0721

Crim. App. No. S30244

United States Court of Appeals for the Armed Forces

Argued May 3, 2005

Decided July 20, 2005

EFFRON, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Captain Anthony D. Ortiz, (argued); Colonel
Carlos L. McDade, Major Sandra K. Whittington, Captain Jennifer
K. Martwick, and Captain Christopher S. Morgan, (on brief).

For Appellee:  Major John C. Johnson, (argued); Captain Kevin P.
Stiens, Lieutenant Colonel Robert V. Combs, and Lieutenant
Colonel Gary F. Spencer, (on brief).


Military Judge:  Patrick M. Rosenow


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a special court-martial composed of a military judge sitting alone, Appellant was convicted, in accordance with his pleas, of attempted wrongful possession of 3, 4 methylenedioxy-methamphetamine (ecstasy), wrongful use of cocaine, and wrongfully inhaling nitrous oxide, in violation of Articles 80, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C §§ 880, 912a, 934 (2000), respectively. He was sentenced to a bad-conduct discharge, confinement for 105 days and reduction to E-1. The convening authority reduced the amount of confinement to ninety-five days and approved the remainder of the sentence as adjudged. The Air Force Court of Criminal Appeals affirmed in an unpublished decision.

Upon Appellant's petition, we granted review of the following issue:

> WHETHER APPELLANT'S GUILTY PLEA TO WRONGFULLY USING NITROUS OXIDE UNDER CLAUSE 1 OF ARTICLE 134, UCMJ, WAS IMPROVIDENT.

For the reasons set forth below, we conclude that Appellant's guilty plea was provident.

## I. BACKGROUND

Article 134 prohibits "all disorders and neglects to the prejudice of good order and discipline in the armed forces." 10

U.S.C. § 934 (2000).  The pertinent charge in the present case alleged that Appellant, in violation of Article 134, "wrongfully inhale[d] nitrous oxide, such conduct being prejudicial to good order and discipline in the armed forces."  At trial, Appellant entered a plea of guilty to this charge.  During the inquiry into the providence of the plea, the military judge informed Appellant of the three elements of this offense:

> [The first element is that] at or near San Antonio, on or about 8 March 2002, you inhaled nitrous oxide;
>
> The second element is that your inhalation of that was wrongful; and
>
> The third element is that under the circumstances your conduct was to the prejudice to good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

The military judge advised Appellant that in order to be guilty of this offense "[y]ou had to know you were inhaling it, it couldn't be accidental" and that "there could be no law enforcement excuse and no medical excuse."  In addition, the military judge advised Appellant that:

> [Conduct] prejudicial to the good order and discipline . . . . means causing a reasonably direct and obvious injury to good order and discipline or had to be service discrediting. Which means it would have to tend to harm the reputation of the service or lower it in public esteem.

During the plea inquiry, Appellant indicated he understood the elements of the offense, the definitions, and the defenses noted by the military judge.

At the request of the military judge, Appellant provided the following details of the offense. He and two other airmen purchased canisters of nitrous oxide, a substance popularly known as laughing gas. In addition to the canisters, called "whippits," they purchased balloons and "what they call a cracker, where you put the cartridge in there and then crack the top and screw it on and put a balloon over it to dispense the air into the balloon and then take the balloon up and inhale it." Appellant told the military judge that he first observed the other airmen inhale the nitrous oxide, and then he did so "[b]y dispensing it into the balloon and inhaling it through the balloon." Appellant also admitted that inhaling the nitrous oxide made him feel "real happy, made me laugh. Afterwards it gave me a real bad headache." Appellant said he felt this way for "[a]bout ten seconds." Moreover, Appellant indicated that he knew he was inhaling nitrous oxide and that is what he intended to do.

The military judge advised Appellant that "there is no statut[ory] basis at least being charged here by the government that nitrous oxide is illegal to inhale, just per se." The military judge added: "What you're telling me though is that

your inhaling [nitrous oxide] under the circumstances, the way it happened in your case, was wrongful[, and that] under the circumstances it was either prejudicial to good order and discipline or was service discrediting." The military judge then asked Appellant to explain specifically why he believed that his actions constituted a crime. Appellant offered two primary reasons. First, he said that he was guilty of the charged offense because the nitrous oxide "impaired my -- it altered my thinking" and that "[f]or ten seconds I was, I guess what I could say, high for ten seconds." Second, Appellant noted that he "belong[ed] to the Air Force. [Nitrous oxide] damages brain cells. It's bad for you . . . . [B]eing a part of the Air Force, I know that I'm supposed to be on my toes, just always looking good even in the public eye, not just the military." Following conclusion of the inquiry, the military judge accepted Appellant's plea.

In the present appeal, Appellant contends that his plea was not provident. We review the military judge's acceptance of Appellant's plea for abuse of discretion. United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F. 1996). The test is "whether there is a 'substantial basis' in law and fact for questioning the guilty plea." United States v. Milton, 46 M.J. 317, 318 (C.A.A.F. 1997) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

## II. DISCUSSION

On appeal, the defense contends that the plea inquiry did not establish facts demonstrating that Appellant's conduct caused "direct and palpable prejudice" to good order and discipline.  See Manual for Courts-Martial (MCM) (2000 ed.), pt. IV, ¶ 60.c. (2)(a).  The defense also addressed the relationship between the military preemption doctrine under Article 134 and the providency of Appellant's plea.  We shall first consider the factual basis for the plea and then address the preemption doctrine under Article 134.

### A. FACTUAL BASIS FOR THE PLEA

Appellant asserts that the plea inquiry did not establish a sufficient factual basis to demonstrate his guilt.  Appellant notes that Article 134 is not "such a catchall as to make every irregular, mischievous, or improper act a court-martial offense."  See MCM, pt. IV, ¶ 60.c. (2)(a).

In the present case, the military judge did not rely simply on affirmative or negative responses to his questions, but took care to ensure that the Appellant, through his own words, explained an understanding of the criminal nature of his conduct.  Beyond acknowledging that he was high for a brief ten-second period, Appellant noted that the inhalation of nitrous oxide was punishable because of the impairment and alteration of

his thinking, and because it "damages brain cells.  It's bad for you."

Appellant argues that a ten-second off-duty "high" resulting from an over-the-counter substance is not sufficient to demonstrate prejudicial conduct, and that the military judge should not have relied on Appellant's statement concerning damage to brain cells because no additional facts were introduced to demonstrate that consumption of nitrous oxide causes harm to its users.  In this case, the providence of the plea is not dependent solely upon the brief period in which the substance impaired Appellant's mental faculties.  Appellant specifically stated that he was pleading guilty because inhalation of the substance could produce damage to the brain. The admission regarding impairment of mental faculties reflected his understanding that he had engaged in conduct that would undermine his capability and readiness to perform military duties -- a direct and palpable effect on good order and discipline.  If he wished to challenge the legal basis for the charge, he could have done so through a motion to dismiss or a plea of not guilty at trial.

Appellant has provided no information on appeal that would undermine the validity of his acknowledgement at trial as to the harmful effects of inhalation of nitrous oxide.  On the contrary, we take judicial notice of the fact that a number of

7

states have recognized the harmful effects by criminalizing inhalation of nitrous oxide.  See, e.g., Tex. Health & Safety Code Ann. § 485.031 (Vernon 2001); Tex. Health & Safety Code Ann. § 484.003(b) (Vernon 2001); Ark. Code Ann. § 5-64-1201 (2001); Cal. Penal Code § 381b (West 1999); Fla. Stat. § 877.111 (West 2001); Ind. Code § 35-46-6-3 (2004).  We emphasize that such state action is not necessary to sustain a wrongful inhalation conviction under Article 134.  Indeed, in the present case the military judge apparently viewed the local state law as not prohibiting the inhalation of nitrous oxide.  Likewise, we note that our decision does not preclude an accused, in the future, from challenging the propriety of a similar inhalation charge under Article 134 in terms of the sufficiency of the impact on good order and discipline.  We simply note the state laws here for the purpose of underscoring the absence of a basis in the present case for questioning the factual sufficiency of Appellant's statements during the plea inquiry.

B.  THE MILITARY PREEMPTION DOCTRINE UNDER ARTICLE 134

The military preemption doctrine limits the application of Article 134 with respect to conduct covered by the specific punitive articles.  MCM, pt. IV, ¶ 60.c. (5)(a).  This statutory interpretation doctrine does not necessarily preclude treatment of offenses under Article 134 whenever there is a similar

8

offense in the specific punitive Articles.  As we noted in

United States v. Kick, 7 M.J. 82, 85 (C.M.A. 1979), "simply

because the offense charged under Article 134, UCMJ, embraces

all but one element of an offense under another article does not

trigger operation of the preemption doctrine."  For an offense

to be excluded from Article 134 based on preemption "it must be

shown that Congress intended the other punitive article to cover

a class of offenses in a complete way."  Id. at 85.

Appellant cites case law suggesting that inhalation of an

intoxicating substance cannot be punished under Article 134

because the field is preempted by Article 112a, which bears the

heading "Wrongful use, possession, etc., of controlled

substances."  Brief of Appellant at 13 (citing United States v.

Plesac, No. ACM 30441, (1994 CCA Lexis 97, at *4, 1994 WL

606002, at *1 (A.F. Ct. Crim. App. Oct. 25, 1994) (unpublished

opinion)(quoting United States v. Reichenbach, 29 M.J. 128, 136-

37 (C.M.A. 1989)).  The legislative history of Article 112a,

however, reflects congressional intent to not cover the class of

drug-related offenses in a complete way.  See S. Rep. No. 98-

53, at 29 (1983) (Article 112a "is intended to apply solely to

offenses within its express terms.  It does not preempt

prosecution of drug paraphernalia offenses or other drug-related

offenses under Article 92, 133, or 134 of the UCMJ.")  There is

nothing on the face of the statute creating Article 112a or in

its legislative history suggesting that Congress intended to preclude the armed forces from relying on Article 134 to punish wrongful use by military personnel of substances, not covered by Article 112a, capable of producing a mind-altered state. See Military Justice Act of 1983, Pub. L. No. 98-209, § 8(a), 97 Stat. 1393, 1403 (1983). To the extent that dicta in Reichenbach, suggests otherwise with respect to prejudicial or service-discrediting conduct, see 29 M.J. at 136-37, we decline to adhere to that view.

## III. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.