RYAN, Judge,
with whom STUCKY, Judge, joins
(dissenting):
It is the prerogative of Congress, not this Court, to enact laws governing the armed forces, including those that define criminal offenses. U.S. Const, art. I, § 8, cl. 14. In Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, Congress criminalized “all disorders and neglects to the prejudice of good order and discipline in the armed forces” and “all conduct of a nature to bring discredit upon the armed forces.” A suicide attempt may constitute self-injury without intent to avoid service and is conduct punishable under this article. See United States v. Ramsey, 40 M.J. 71, 75 (C.M.A.1994) (holding that “attempted suicide ... may be a sufficient basis for a charge of intentional self-infliction of injury to the prejudice of good order and discipline”). While the convening authority’s decision to refer charges against Appellant in the instant case may well be unfair or ill advised, the wisdom of that decision is not within our jurisdiction to review. See United States v. Bell, 38 M.J. 358, 365, 370 (C.M.A.1993) (holding that the choice whether to exercise “the prosecution function ... is plainly a matter of prosecuto-rial discretion, not judicial discretion,” and constitutes a choice over which “[w]e have no ombudsman’s override ... however much we may agree or disagree with it”).
Nonetheless, the majority endeavors to distinguish a “bona fide suicide attempt” from a mere “suicidal gesture,” United States v. Caldwell, 72 M.J. 137, 141 n. 2 (C.A.A.F. 2013), a distinction that is unsupported by the statutory elements of Article 134, UCMJ, or any of the elements of self-injury without intent to avoid service, as defined by the President.[1] Neither Article 134, UCMJ, nor any element of the charged offense requires that the conduct be driven by a particular motive. Cf. United States v. Wilson, 66 M.J. 39, 47 (C.A.A.F.2008) (declining to “redraft Article 125, UCMJ,” to include a mistake of fact defense “that Congress might have added but did not”). Yet no one disagrees that the offense of self- *143 injury without intent to avoid service is well within the scope of conduct made criminal by Article 134, UCMJ.
While I question whether punishing either bona fide suicide attempts or suicidal gestures under Article 134, UCMJ, is wise or fair, that is a determination to be made by the President and Congress, not this Court. See United States v. Solis, 46 M.J. 31, 35 (C.A.A.F.1997) (“[Pjolicy arguments ... must be directed to Congress and the President for consideration, not to this Court.”). It is undoubtedly within the prerogative of the Secretary of Defense to take an official position that “[sjuicide prevention is first and foremost a leadership responsibility” and that commanders “cannot tolerate any actions that belittle, haze, humiliate, or ostracize any individual, especially those who require or are responsibly seeking professional services.” Memorandum from Sec’y of Defense to See’ys of the Military Departments et al., Suicide Prevention for Dep’t of Defense Personnel (May 10, 2012).
However, the Secretary’s view on the appropriate balance between empathy and prosecution in deterring suicide attempts in the military does not bear on the altogether different question whether, as a matter law, a suicide attempt is punishable under Article 134, UCMJ. Until Congress or the President takes action with regard to the criminality of bona fide suicide attempts, this Court is bound to apply the law as it currently exists.
Our role is not to create exceptions for certain conduct that the statute would otherwise plainly reach, but is merely to determine whether Appellant’s guilty plea was provident. Because I conclude that “the military judge obtained an adequate factual basis to support the plea and correctly applied the law,” United States v. Inabinette, 66 M.J. 320, 321 (C.A.A.F.2008), one that we would find adequate in any other context, I respectfully dissent.
A.
As a threshold matter, however counterin-tuitive it seems to me, a suicide attempt that rises to the level of self-inflicting an injury is punishable conduct under Article 134, UCMJ. See Ramsey, 40 M.J. at 75. Here, “Appellant’s attempted suicide was not the substantive crime he faced; rather, his attempt to kill himself was the basis for his crime of self-inflicting an injury to the prejudice of good order and discipline.” Id.
While ostensibly declining to address the issue “whether, as a general matter, a bona fide suicide attempt alone may be service discrediting, or is more properly considered a noncriminal matter requiring treatment not prosecution,” Caldwell, 72 M.J. at 142, the majority effectively places “bona fide” suicide attempts beyond the reach of Article 134, UCMJ. In doing so, the majority claims that Ramsey, where the appellant shot himself in the shoulder while on deployment in Saudi Arabia, is not “controlling precedent,” id. at 14CM1, because Ramsey was a “suicidal gesture,” as opposed to a bona fide suicide, case. Caldwell, 72 M.J. at 140-41 & n. 2. At least three flaws undermine this reasoning.
First, the Court in Ramsey explicitly referred to the appellant’s conduct as an “attempted suicide” and an “attempt to kill himself.” 40 M.J. at 75. Not once did the Court refer to the appellant’s conduct as a “suicidal gesture” or intimate that the appellant’s conduct was merely a cry for help, or an attempt to avoid duty.
Second, distinguishing the infliction of self-injury as a mere suicidal gesture from the infliction of self-injury as a bona fide suicide attempt is inconsistent with the elements of self-injury without intent to avoid service, which requires only that the accused intended to injure himself, and does not require that the accused intended the injury only as a “gesture.” See MCM pt. IV, para. 103a.b.(l).
Third, as a practical matter, courts are ill equipped to discern whether the subjective impetus behind a servieemember’s self-inflicted injury was a genuine desire to kill oneself, the fact that distinguishes a “suicidal gesture,” which the majority suggests may be punishable, Caldwell, 72 M.J. at 140-41, from a “bona fide” suicide attempt, which it *144 suggests may not. Id. Such a determination is best left to mental health experts. See, e.g., Rule for Courts-Martial (R.C.M.) 706(c)(1) (requiring that, when a mental examination is ordered to determine mental capacity or mental responsibility, “the matter shall be referred to a board consisting of one or more persons,” each of whom “shall be either a physician or a clinical psychologist” and one of whom must “be either a psychiatrist or a clinical psychologist”).
B.
The proper inquiry is whether Appellant’s guilty plea was provident. The purpose of Care’s providence inquiry is twofold: “the first is a judicial determination of the providence of the plea; and the second is a total transcript of the plea inquiry for the purpose of review.” United States v. Lanzer, 3 M.J. 60, 62 (C.M.A.1977) (interpreting United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969)). “The fundamental requirement of plea inquiry under Care and R.C.M. 910 involves a dialogue in which the military judge poses questions about the nature of the offense and the accused provides answers that describe his personal understanding of the criminality of his or her conduct.” United States v. Hartman, 69 M.J. 467, 469 (C.A.A.F.2011).
It is well settled that “[o]nce a military judge has accepted an accused’s guilty pleas and entered findings of guilty, this Court will not set them aside unless we find a substantial basis in law or fact for questioning the plea.” United States v. Schweitzer, 68 M.J. 133, 137 (C.A.A.F.2009) (citing Inabinette, 66 M.J. at 322). “A military judge’s decision to accept a guilty plea is reviewed for an abuse of discretion.” Inabinette, 66 M.J. at 322. “A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea — an area in which we afford significant deference.” Id. Under this deferential standard, “[i]f Appellant’s providence inquiry established the facts necessary to support the elements of the [Article 134,] UCMJ offense charged, the plea to that charge is provident.” United States v. Holbrook, 66 M.J. 31, 32 (C.A.A.F.2008) (citing United States v. Faircloth, 45 M.J. 172, 174 (C.A.A.F.1996)).
Here, in pleading guilty to one specification of self-injury, in violation of Article 134, UCMJ, Appellant’s providence inquiry had to establish facts sufficient to support two elements: “(1) [t]hat the accused intentionally inflicted injury upon himself or herself; [and] (2) [t]hat, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.” MCM pt. IV, para. 103a.b.
During the providence inquiry, the military judge asked Appellant about the first element: (1) “And you [cut your wrists with a razor blade] to intentionally injure yourself?” and (2) “It’s fair to say that you did this on purpose?” Appellant answered both questions in the affirmative. Appellant confirmed that no one forced or coerced him to cut his wrists, and his decision was freely made.
“A military judge can presume, in the absence of contrary circumstances, that the accused is sane.” United States v. Riddle, 67 M.J. 335, 338 (C.A.A.F.2009); but see Dep’t of the Navy, Judge Advocate General Instr. 5800.7F, Manual of the Judge Advocate General, eh. II, pt. E, para. 0218 c., at 2-36 (June 20, 2007) (“In view of the strong human instinct for self-preservation, suicide and a bona fide suicide attempt, as distinguished from a suicidal gesture, creates a strong inference of lack of mental responsibility.”). However, where,
the accused’s statements or material in the record indicate a history of mental disease or defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus a possibility of a defense or only the “mere possibility” of conflict.
United States v. Riddle, 67 M.J. 335, 338 (C.A.A.F.2009) (internal citation omitted). “The former requires further inquiry on the part of the military judge, the latter does not.” Id.
Here, the military judge explicitly asked defense counsel, “do you believe that there’s *145 any M.R.E. 706 issues here?”[2] Defense counsel replied that he “believe[d] that [Appellant] knew what he was doing [when he cut his wrists], and he knew that what he was doing was wrong,” and “at present [Appellant] has the ability to understand our conversations and to adequately defend himself.” Moreover, Appellant stated that (1) he “made a conscious decision at th[e] time that [he] did not want to live,” (2) “it wasn’t just temporary insanity,” and (3) being off the medication that he was prescribed for his delayed posttraumatic stress disorder (PTSD), personality disorder, and depression did not give him a reason to inflict the injury on himself.[3]
In light of defense counsel and Appellant’s statements, coupled with the presumption of sanity, the military judge reasonably weighed the evidence in determining that further inquiry under R.C.M. 706 was not required. See also Riddle, 67 M.J. at 339 (holding that the appellant’s guilty plea was provident, despite her bipolar diagnosis, where the military judge (1) “specifically asked her about her mental responsibility at the time the offenses were committed, ensuring that at the time of her offenses she understood both what she was doing and the difference between right and wrong”; and (2) found “that she appeared to ‘completely understand the nature and quality of the[ ] proceedings’ ”).
In light of the above, the record clearly establishes a sufficient factual basis to support the first element of self-injury — that he intentionally inflicted injury upon himself.
As to the second element, Appellant’s guilty plea is provident if there is a sufficient factual basis for either clause 1 or clause 2 of the terminal element. In the course of the providence inquiry, Appellant admitted that his conduct, under the circumstances, was both prejudicial to good order and discipline and service discrediting.[4]
“Conduct prejudicial to good order and discipline is conduct that causes a reasonably direct and palpable injury to good order and discipline.” United States v. Cendejas, 62 M.J. 334, 340 (C.A.A.F.2006). Here, the facts elicited from Appellant were that he cut open his wrists in his barracks room, where he was found by one of his staff noncommis-sioned officers (SNCOs), who had to wrap socks around Appellant’s wrists to try to stop the bleeding and call for medical help. Appellant was then hospitalized.[5] According to Appellant, (1) his conduct “affected the rest of the unit,” and when he came back “a lot of people were shocked [and] didn’t know how to react”; (2) his actions made his SNCOs and officers feel as if “they couldn’t help [him]”; and (3) other servicemembers would wonder if they could “really go to [the command] and ask for help if [the command] couldn’t save [Appellant].”[6] In light of the *146 above, Appellant’s guilty plea provided a sufficient factual basis under our case law for finding a “direct and palpable” effect on good order and discipline. Cendejas, 62 M.J. at 340. See, e.g., United States v. Erickson, 61 M.J. 230, 232-33 (C.A.A.F.2005) (finding that conduct that undermined an appellant’s capability and readiness to perform military duties had a direct and palpable effect on good order and discipline); United States v. Irvin, 60 M.J. 23, 24-26 (C.A.A.F.2004) (finding a sufficient factual basis to support clause 1 and clause 2 of Article 134’s terminal element where the appellant admitted that he had possessed child pornography but there was no evidence that any other servicemem-bers were aware of, or saw the depictions).
In addition, Appellant pleaded to facts that demonstrate his belief that his conduct was service discrediting. To be service discrediting, Appellant’s conduct must “tend to bring the service into disrepute if it were known.” United States v. Phillips, 70 M.J. 161, 166 (C.A.A.F.2011). Evidence “that anyone witnessed or became aware of the conduct,” has been held to be merely one factor to consider. Id. As a general matter, we have required that an accused need only explain how his conduct would negatively impact public opinion in theory, not that his conduct has, in fact, had a negative impact on public opinion. See, e.g., United States v. Roderick, 62 M.J. 425, 428 (C.A.A.F.2006) (finding that the appellant’s guilty plea to clause 2 of the terminal element was provident where he “admitted that his actions ... ‘may lower the service in public esteem’ if people became aware of what he was doing”).
Here, when asked what the public would think about Marines attempting suicide, Appellant stated that the public would think “bad thoughts about [the] whole command.” Appellant also observed that if his predicament made the news, the public would view his supervisors as not having done their jobs, even though Appellant had never told his supervisors about his depression.
The majority contends that these facts demonstrate that the command’s conduct, not Appellant’s conduct, was service discrediting, despite Appellant’s statement that his command “knew nothing of [his depression].” Caldwell, 72 M.J. at 142. While it is certainly reasonable to disagree as to whether particular conduct is or is not service discrediting, it is not reasonable to say that the military judge abused his discretion in accepting this plea. Where, as here, Appellant sought no help from the command, any negative perception of the command’s failure to help could reasonably derive from the Appellant’s decision to attempt suicide by intentionally cutting his wrists instead of seeking help from his command. By not reaching out to his command for help, Appellant precluded the command’s help. Thus, it is Appellant’s conduct, not the command’s conduct, which forms the basis of the public’s potentially negative view of the military in light of these events — a fact that Appellant recognized and admitted. The majority ignores the purpose of the Care inquiry, and Appellant’s own express words as to why he felt his conduct was service discrediting, obfuscating the issue and flipping the genesis of *147 the “act” that is potentially service discrediting to protect hypothetical whistleblowers and victims, despite the nonexistence of an enumerated Article 134, UCMJ, offense proscribing such conduct.
Accordingly, because the factual circumstances as revealed and admitted to by Appellant objectively support the plea as to each element of self-injury in violation of Article 134, UCMJ, the military judge did not abuse his discretion in accepting Appellant’s guilty plea to this offense as provident under the ordinary standards employed to review this issue. Whether to subject a particular Article 134, UCMJ, guilty plea to heightened scrutiny cannot hinge on this Court’s diagnosis that the conduct at issue is a “matter requiring treatment,” Caldwell, 72 M.J. at 142, rather than a crime — many of our cases, including this one, are both. I question whether the majority’s approach will prevail in other contexts where the offense is one they deem more suitable for prosecution, even though that is not a matter within our purview, but is one committed to the convening authority’s discretion. R.C.M. 601.
C.
I would affirm the decision of the Navy-Marine Corps Court of Criminal Appeals.

. The Manual for Courts-Martial defines the elements of self-injury without intent to avoid service:
(1) That the accused intentionally inflicted injury upon himself or herself;
(2) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Manual for Courts-Martial, United States pt. IV, para. 103a.b. (2008 ed.) (MCM).

. The military judge’s reference to the Military Rules of Evidence was a misstatement. The correct MCM rule is R.C.M. 706.

. Despite the majority's contention to the contrary, Caldwell, 72 M.J. at 140-41, the recognition of PTSD in the DSM, Am. Psychiatric Ass’n, Diagnostic and Statistical Manual of Mental Disorders 463-68 (4th ed. 2000) (text rev.), does not go to whether bona fide suicide attempts are punishable under Article 134, UCMJ. And, while a PTSD diagnosis may raise a defense in certain circumstances, for the reasons discussed above, it did not do so here.

. Appellant stipulated to the following: "That, under the circumstances, the conduct was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.”

. In the context of a self-injuiy charge "[tjhe circumstances and extent of the injury ... are relevant to a determination that the accused's conduct was prejudicial to good order and discipline, or service-discrediting.” AÍCAÍ pt. IV, para. 103a.c.(l).

.The majority concludes that the "expenditure of medical resources alone” cannot undermine good order and discipline in this case, because “then every bona fide suicide attempt requiring medical attention would be per se prejudicial to good order and discipline.” Caldwell, 72 M.J. at 141. Even assuming that the majority is correct in its unsupported assertion that, absent evidence that the medical resources were needed elsewhere, the expenditure of medical resources— including the response of servicemembers serving as emergency medical personnel — does not undermine good order and discipline, id., Appellant’s plea remains provident. During the plea colloquy, Appellant described his conduct as: (1) affecting unit morale; (2) engendering a feeling of failure among his SNCOs and officers; and (3) risking an erosion of servicemembers' confidence *146 in their commanders. Under our case law, these facts provide a more-than-adequate basis to support Appellant’s plea. See, e.g., United States v. Phillips, 70 M.J. 161, 163 (C.A.A.F.2011) (holding that to establish a violation under clause 2 of Article 134, UCMJ, "evidence that the public was actually aware of the conduct is not necessarily required”); United States v. Green, 68 M.J. 266, 270 (C.A.A.F.2010) (holding that the appellant’s conviction of indecent language under Article 134, UCMJ, for uttering the sound "mmmm-mmmm-mmmm,” was legally sufficient); United States v. Vaughan, 58 M.J. 29, 36 n. 7 (C.A.A.F.2003) (finding the appellant's guilty plea provident where the military judge asked the accused if she ”agree[d] that if somebody out there heard about this ... they would look down upon an Air Force member leaving their child unaccompanied ... for that lengthy a period of time” and the accused responded, "Yes, ma’am”); United States v. Schumann, No. ACM 35119, 2004 CCA LEXIS 167, at *8, 2004 WL 1724818, at *3 (A.F.Ct.Crim.App. July 29, 2004) (finding a guilty plea provident where the appellant: (1) stipulated that his "failure to place or maintain funds in his account was ... to the prejudice of good order and discipline in the armed forces, and was of a nature to bring discredit upon the armed forces”; and (2) simply replied "Yes, Your Honor” when the militaiy judge asked whether his conduct was service discrediting and would tend to lessen the esteem that the public had for the militaiy), petition denied, 60 M.J. 430 (C.A.A.F.2004).