# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant CHRISTOPHER W. BROWNE**
**United States Army, Appellant**

ARMY 20130252

Headquarters, 25th Infantry Division
David L. Conn, Military Judge (arraignment)
Gary M. Saladino, Military Judge (trial)
Colonel Mark A. Bridges, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA;  Major Amy E. Nieman, JA; Captain Sara E. Lampro, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Benjamin W. Hogan, JA (on brief).

30 June 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of failing to obey a lawful general order, one specification of resisting apprehension, three specifications of willfully damaging military property of a value greater than $500.00, three specifications of willfully damaging property other than military property of a value greater than $500.00, two specifications of drunken operation of a vehicle, four specifications of aggravated assault, one specification of assault consummated by battery, four specifications of wrongfully and willfully discharging a firearm, and one specification of reckless endangerment, in violation of Articles 92, 95, 108, 109, 111, 128, and 134 of the  Uniform Code of Military Justice, 10 U.S.C. §§ 892, 895, 908, 909, 911, 928, 934, [hereinafter UCMJ].  The military judge sentenced appellant to confinement for forty-two months and reduction to E-1.  Pursuant to a

pretrial agreement, the convening authority approved only thirty months of confinement and reduction to the grade of E-1. Additionally, the convening authority credited appellant with 113 days of confinement credit.

This case is before us for review under Article 66, UCMJ. Appellant raises two assignments of error. Both merit discussion and one merits relief. We address two additional issues which also warrant discussion and relief. Those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) are without merit.

## BACKGROUND

Appellant and his family lived on Aliamanu Military Reservation in Hawaii. On 22 November 2012, appellant and his wife argued about their Thanksgiving dinner plans. Appellant had been drinking heavily that day while also taking his prescription medication. Appellant became extremely angry, pushed the items on the kitchen countertop onto the floor, and struck his wife on her head with his fist.

Appellant's wife ran from the home to a neighbor's house with her three and five-year-old children in tow. Appellant screamed to his wife he was going to get his "gun."[1] Appellant's wife called the military police (MP) while appellant retrieved his pistol from their bedroom. While inside his military quarters, appellant fired one round into their bedroom wall. He then ran outside and fired a shot into the air. In quick succession, he fired two more shots—one into the back window of his vehicle, shattering the back window, and then another into the back of his neighbor's vehicle. This round shattered the rear window of the neighbor's vehicle, penetrated the adjacent fence, and came to rest in the siding of the neighbor's house.

Next, appellant got into his car and headed off the military installation. The MPs tried to stop appellant, but appellant ran a stop sign and proceeded to enter the highway. Once off the installation, Hawaii police also began to pursue appellant with squad cars and a helicopter. During the encounter, appellant swerved in and out of traffic at a high rate of speed attempting to evade capture. Appellant hit five civilian vehicles before entering a residential neighborhood where he was forced to slow his vehicle. Once blocked in by police cars, appellant rammed his car repeatedly into an undercover police car driven by Sergeant JRR until he was able to break free and continue to flee.

Appellant drove onto Highway 1 towards Hanauma Bay, a route which eventually becomes a single lane road. Appellant drove on the wrong side of the road in and out of oncoming traffic until he was again forced to slow down. Military police again managed to box appellant in with their patrol cars. Appellant

---

[1] Appellant's firearm was not registered in accordance with the U.S. Army Pacific policy applicable to Army installations in Hawaii. USARPAC Policy Memorandum Installation—1, Discipline, Law, and Order, para. 7.b(1)(a) (21 January 2012).

responded by ramming his vehicle forward into a patrol vehicle driven by Sergeant MSR, and then in reverse into two other patrol vehicles. Finally, appellant was forced to a stop.

An MP, with his weapon drawn, approached appellant and directed appellant to exit his vehicle. Appellant refused to cooperate and had to be forcibly removed by police from his car and restrained. Appellant's loaded pistol was found on the front passenger seat of the vehicle. A blood test administered approximately nine hours after the incident revealed appellant's .13 blood alcohol content.

## LAW AND DISCUSSION

### *Terminal Element of Willfully and Wrongfully Discharging a Firearm*

Appellant argues the military judge abused his discretion by failing to elicit an adequate factual basis from appellant as to how his conduct of willfully and wrongfully discharging his firearm four separate times on a military reservation was prejudicial to good order and discipline under Article 134, UCMJ.

We review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008); *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "[I]n reviewing a military judge's acceptance of a guilty plea for an abuse of discretion [we] apply a substantial basis test: Does the record as a whole show a substantial basis in law and fact for questioning the guilty plea." *Inabinette*, 66 M.J. at 322 (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). There exists a substantial basis in fact to question a plea of guilty where a military judge "fails to obtain from the accused an adequate factual basis to support the plea." *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)). "In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit factual circumstances as revealed by the accused himself [that] objectively support that plea[.]" *Jordan*, 57 M.J. at 238 (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980)) (internal quotation marks omitted).

In order to find appellant's conduct was prejudicial to good order and discipline, the plea inquiry must establish facts demonstrating appellant's conduct caused "direct and palpable" prejudice to good order and discipline. *See Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 60.c.(2)(a); *see generally United States v. Erickson,* 61 M.J. 230, 231-32 (C.A.A.F. 2005). The requirement in Article 134, UCMJ, for a "direct and palpable" prejudice to good order and discipline means the conduct "must be easily recognizable as criminal, must have a direct and immediate adverse impact on discipline, and must be judged in the context surrounding the acts." *United States v. Henderson*, 32 M.J. 941, 944 (N.M.C.M.R. 1991); *see also United States v. Warnock*, 34 M.J. 567 (A.C.M.R. 1991).

During the providence inquiry, the military judge explained the elements of willfully and wrongfully discharging a firearm under such circumstances as to endanger human life, and he properly defined the term "prejudicial to good order and discipline." Appellant acknowledged he understood the military judge's explanations and was then asked questions about each specification.

Discussing Specification 1, appellant explained:

> I did intentionally fire my weapon as stated, first in my bedroom and according to Specification 1, it in fact was prejudicial to discipline and good order in the Armed Forces and . . . the reason why I believe that is because it is not normal behavior for me or disciplined Soldiers, *to put anyone at risk with a deadly weapon*, *to discharge in a home or outside except at an approved place like a range*. There's no reason to believe that that's reflective of someone exercising good military discipline or firearm safety.

(emphasis added). Appellant continued to describe the danger posed to human life when discharging a firearm in his military housing area in close proximity to others.

Regarding Specification 2, appellant again acknowledged that "wrongfully and willfully discharging a weapon endanger[ed] the lives of whoever might've been outside at the time" and that it was in "direct disruption" of good discipline.

In reference to Specification 3 of the willful and wrongful discharge offense, appellant said his behavior "goes against Army values and the standards that the Army sets."

Finally, concerning Specification 4, appellant acknowledged that discharging a weapon in a military housing area could kill someone because "there is no telling where that round might come down."

This court does not look at appellant's responses in a vacuum. Instead, we look to the whole of the *Care* inquiry[2] and the context in which appellant described his understanding of events as they relate to the elements of the specifications and charge to which he is pleading guilty. *See generally Erickson*, 61 M.J. at 231-32; *United States v. Barton*, 60 M.J 62, 64-65 (C.A.A.F. 2004). This is especially significant when the four specifications at issue here, involve nearly the identical behavior occurring in rapid succession and under the same surrounding circumstances. We conclude appellant understood that discharging a firearm on post in a housing area was prejudicial to good order and discipline, because his conduct

---

[2] *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

was dangerous, undisciplined, violated Army standards and values, violated Army weapons training, created a breach of the peace, and could have resulted in the death or injury of military members or their family members thereby detracting from military readiness. Therefore, under the totality of circumstances, we conclude appellant's plea was provident.

*Failure of Providence Inquiry to Elicit Proof of Damage over $500*

In Specifications 2 and 3 of Additional Charge I appellant was charged with damaging military property—the damage to the property being in excess of $500. Appellant correctly argues, and the government concedes, that the military judge failed to elicit the dollar amount of the damage to these two military vehicles. The military judge did, however, adequately establish appellant's providency to damaging the two military vehicles.[3]

We therefore accept the government's concession and will amend the findings of guilty to Specifications 2 and 3 of Additional Charge I appropriately in our decretal paragraph.

*Unreasonable Multiplication of Charges*

In the Specification of Additional Charge IV, appellant was charged with reckless endangerment, a violation of Article 134, UCMJ, on 22 November 2012, by "discharging a personal firearm approximately four times in a residential neighborhood, conduct likely to cause death or grievous bodily harm to local residents, and that said conduct was prejudicial to good order and discipline in the armed forces." In the four specifications of Charge II, appellant was charged with "wrongfully and willfully discharging a firearm," on four occasions on 22 November 2012, "under circumstances such as to endanger human life, and that said conduct was prejudicial to good order and discipline in the armed forces."

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;

---

[3] The military judge sufficiently established the value of the damage in Specification 1 of this charge.

(2) Is each charge and specification aimed at distinctly separate criminal acts?;

(3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;

(4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338–39 (internal quotation marks omitted).

Application of the *Quiroz* factors in this case balances in favor of appellant and requires a finding of unreasonable multiplication of charges for findings. The additional reckless endangerment charge and specification exaggerates appellant's criminality by penalizing the same set of acts two different ways. The underlying conduct that forms the basis for the reckless endangerment charge, namely, discharging a weapon four times in a residential neighborhood, is aimed at precisely the same criminal activity as the willful and wrongful discharge of a firearm charge and its four specifications. We find appellant's conviction for reckless endangerment pursuant to Article 134 constitutes an unreasonable multiplication of charges with the separate charge of willful and wrongful discharge of a firearm under Article 134.[4] Consequently, we will take appropriate action in our decretal paragraph.

*Multiplicity and Drunk Driving*

In Specifications 1 and 2 of Additional Charge VIII, appellant is charged with drunk driving—in violation of Article 111—on 22 November 2012 and causing injury to two separate victims, Sergeant JJR and Sergeant MSR.

The evidence before us indicates both specifications resulted from a single incident of drunken driving. Our superior court has rejected the notion that "'different victims' . . . determin[e] the appropriate unit of prosecution for the military offense of drunken driving." *United States v. Scranton*, 30 M.J. 322, 324 (C.M.A. 1990). In *Scranton*, the Court of Military Appeals allowed only one court-martial conviction under Article 111 for a drunk driving accident harming multiple

---

[4] Because of our finding, we need not address appellant's argument that the military judge abused his discretion by failing to elicit facts sufficient to support the Article 134 "prejudicial to good order and discipline" element in the reckless endangerment charge.

victims, despite accompanying guidelines providing for increased punishment in cases involving personal injury.  *Id.* at 325-27.

As the court stated in *Scranton*, the "starting point in determining legislative intent is the language of the statute under which these convictions purportedly lie." *Id.* at 324.  Criminal offenses such as robbery, assault, or murder, have, as their "well-established objective," the "protection of the individual person as a victim." *Id.* at 325.  With regard to drunk driving under the UCMJ, "there is no mention whatsoever in this statute of physical injury, the number of victims, or even the occurrence of an accident resulting from the drunken operation of a motor vehicle." *Id.*  *See also United States v. Grossman*, 2 U.S.C.M.A 406, 410, 9 C.M.R. 36, 40 (1953).  Therefore, as our superior court concluded in *Scranton*, "the unambiguous language of [Article 111] defines the *actus reus* of this offense in a manner inconsistent with the Government's 'different-victims' argument." 30 M.J. at 324; *see also People v. McFarland*, 765 P.2d 493 (Cal. 1989); *Wilkoff v. Superior Court*, 696 P.2d 134 (Cal. 1985).

We conclude Article 111 permits only a single offense of drunken driving under the circumstances of this case.  Accordingly, we will consolidate the two specifications.

## CONCLUSION

For Specifications 2 and 3 of Additional Charge I, we only AFFIRM findings of guilty to the lesser-included offense of willful damage to military property of some value.

The findings of guilty to Additional Charge IV and its Specification are set aside and that specification and its charge are dismissed.

Specifications 1 and 2 of Additional Charge VIII are consolidated into a single specification, to read as follows:

> In that Sergeant Christopher W. Browne, U.S. Army, did at or near Honolulu, Hawaii, on or about 22 November 2012, physically control a vehicle, to wit, a passenger car, while drunk, and did thereby cause said vehicle to strike and injure Sergeant JRR, U.S. Army and Sergeant MSR, U.S. Army.

The finding of guilty of the Specification of Additional Charge VIII, as so amended, is AFFIRMED.  The finding of guilty to Specification 2 of Additional Charge VIII is set aside and that specification is DISMISSED.

The remaining findings of guilty are AFFIRMED.

7

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we find no dramatic change in the penalty landscape or exposure that might cause us pause in reassessing appellant's sentence. Second, appellant was tried and sentenced by a military judge alone. Third, we find the nature of the remaining offenses still captures the gravamen of the original offenses, and the aggravating circumstances surrounding appellant's conduct remain admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted errors, we AFFIRM the approved sentence. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court