Judge STUCKY
delivered the opinion of the Court.
Appellant asserts that her guilty pleas were improvident because the military judge did not explain or discuss the defense of lack of mental responsibility during the plea inquiry. We hold that Appellant’s pleas were provident and that'under the facts of this case the military judge was not obligated to explicitly explain or discuss that defense with Appellant.
I. Background
Appellant, Private (PVT) Carrie N. Riddle, pled guilty before a general court-martial to four specifications of use of marijuana and one specification of being absent without leave (AWOL). Articles 112a and 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 912a, 886 (2000). The military judge, sitting alone, sentenced Appellant to a bad-conduct discharge and ten days of confinement. As Appellant had ten days of pretrial confinement credit, she served no confinement following .her court-martial. The United States Army Court of Criminal Appeals summarily affirmed the findings and sentence on May 28, 2008. United States v. Riddle, No. ARMY 20070756 (A.Ct.Crim.App. May 28, 2008).
Appellant entered active duty on May 31, 2006, and at the time of these offenses was assigned to Fort Benning, Georgia. According to the stipulation of fact admitted at trial, Appellant used marijuana on several occasions throughout her period of active duty. On March 1, 2007, Appellant left her unit for over a month and traveled to South Carolina with another soldier, PVT Renee Kunsman, remaining there until her April 16, 2007, voluntary return to her unit. During this trip Appellant used marijuana with PVT Kunsman. Appellant advised the pregnant PVT Kunsman that marijuana could be good for her nerves and appetite. In a stipulation of fact, the parties agreed that Appellant had chronic alcohol and marijuana dependence as well as bipolar and borderline personality disorder, conditions which pre-dated her enlistment.
The military judge was aware of Appellant’s mental condition. He knew that before her unauthorized absence she was scheduled to be administratively discharged for her mental condition, and that she was then receiving treatment at an “off-post installation that specializes in mental issues, mental and behavioral issues.” The military judge was also aware that Appellant arrived at trial directly from the mental health facility and would return there at the conclusion of trial. In addition, the military judge’s questions indicate that Appellant’s mental state was of concern to him, inquiring “Are you feeling okay?” when Appellant nonchalantly referred to throwing the butt of a marijuana cigarette into a lake as “getting the fishes high.”
At trial, the military judge asked Appellant a series of questions regarding her mental health and her competency to stand trial:
MJ: Now, I understand you are currently receiving treatment at the Bradley Center in Columbus, Georgia. Is that true?
ACC: Yes, sir.
MJ: How long have you been down at the Bradley Center?
ACC: Since the 12th of June, this time, sir.
MJ: Okay. And what are you being treated for?
ACC: Bipolar and borderline personality disorder with severe depression, sir.
MJ: Okay. I understand that at the conclusion of this trial today you are going to return to the Bradley Center for continued treatment?
ACC: Yes, sir.
MJ: All right- The question is whether or not you are- — -you believe that you are competent to stand trial.
*337 Do you think you are?
ACC: Yes, sir.
MJ: Do you believe that you fully understand not only the ramifications of this court-martial but what is going to happen today?
ACC: Yes, sir.
MJ: Okay. Are you currently taking any drugs or medications?
ACC: Yes, sir.
MJ: What drugs or medications are you taking?
ACC: My medications are, Zoloft, 100 milligrams, with Topamax three times a day; Ibuprofen, 800 milligrams three times a day; Zyrtec; Atarox [sic], Sereoquel; and—
MJ: Are most of those anti-depressants? ACC: Sleep aids, mood suppressants, and a couple of anti-depressants.
MJ: Okay. But Major Grills [defense counsel] assures me that, in her opinion, she believes you are competent to understand the nature of these proceedings. Do you agree with that?
ACC: Yes, sir.
The military judge also questioned Appellant as to her mental capacity and responsibility at the time of the offenses:
MJ: Okay. Did you understand what you were doing when you went AWOL?
ACC: Yes, Sir.
MJ: Okay. Now I realize that you have had some psychiatric issues, I guess apparently in AIT and that continued apparently to now, although, I have to say for the record, you appear to be extremely articulate and very alert today. But my question to you is, as a Soldier, did you understand that when you went AWOL ... that what you were doing was wrong, that you were not authorized to do that?
ACC: Yes, Sir.
MJ: And you knew that smoking marijuana during all of these four specifications was wrongful, correct?
ACC: Yes, sir.
MJ: And do you agree and do you admit that during this period of time from early December through April 2007, that your use of marijuana was wrongful?
ACC: Yes, Sir.
Trial defense counsel expanded upon this line of questioning during Appellant’s un-sworn sentencing statement in an apparent effort to display Appellant’s understanding and remorse for her crimes:
DC: And we have already talked about the different conditions that you suffer from, but — and the military judge has already asked you this, but the offenses that you plead guilty to, you understand what you were doing at those times?
ACC: Yes, ma’am.
DC: And you understood right from wrong?
ACC: Yes, ma’am.
During the sentencing proceeding the military judge accepted into evidence a mental health evaluation of Appellant detailing her condition. The “Report of Mental Status Evaluation” was created on May 14, 2007, and updated on May 17,2007, by Major Long P. Huynh, the Chief of Inpatient Psychiatry at Martin Army Community Hospital. The report stated that Appellant “has the mental capacity to understand and participate in the proceedings” and that she “was mentally responsible.” Major Huynh notes Appellant’s two suicide attempts and states that Appellant would remain an inpatient for the next week. He further states that Appellant is “medically and psychologically stable enough for 1-2 weeks of confinement”; periods longer than that “may cause her clinical conditions to deteriorate and possibly lead to readmission to psychiatry.” It is unclear why the report was created; however Major Huynh states in the comments section that Appellant was “unsuited for further military service. Her company commander has agreed to pursue to [sic] the most rapid separation possible.” Although this form references “proceedings” for which Appellant was determined to be “mentally responsible,” the form was completed nine days prior to the prefer-ral of charges.
*338 After handing down the sentence knowing that Appellant was going to be returned directly to the Bradley Center, the military judge made one final statement regarding Appellant’s mental state:
I just want to say one more time for the record, my personal observations in this courtroom today are that, although Private Riddle indicated she was taking a number of drugs at the Bradley Center ... she appeared to the court to be fully cognizant of everything that happened today. She was alert. She was articulate, and she appeared to the court to completely understand the nature and quality of these proceedings.
II. Discussion
Appellant now argues that the military judge abused his discretion when he accepted her guilty pleas. Appellant asserts that, given her mental health history, the military judge was required to explain or discuss the defense of lack of mental responsibility, and furthermore the military judge was required to ensure that trial defense counsel had evaluated the viability of the defense and/or elicit facts from her that would negate the defense. Appellant contends that, as none of these things occurred, her pleas were improvident.
“[W]e review a military judge’s decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo.” United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008); United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F.2007). If, during the proceedings, the accused sets up matter inconsistent with the plea, it is the responsibility of the military judge to either resolve the inconsistency or reject the plea. Article 46(a), UCMJ, 10 U.S.C. § 845(a) (2000); Shaw, 64 M.J. at 462. Once the military judge has accepted the pleas and entered findings based upon them, this Court will not set them aside unless we find a substantial conflict between the pleas and the accused’s statements or other evidence of record. Shaw, 64 M.J. at 462. More than a “mere possibility” of conflict is required. Id. (citations and quotation marks omitted). Instead, this Court must find “something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant’s guilty plea.” Inabinette, 66 M.J. at 322.
In military law, lack of mental responsibility is an affirmative defense that an accused must establish by clear and convincing evidence. Article 50a(a), UCMJ, 10 U.S.C. § 850a(a) (2000); Rules for Courts-Martial (R.C.M.) 916(b)(2). If “there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial” the military judge and other officers of the court each has the independent responsibility to inquire into the accused’s mental condition. R.C.M. 706(a). An accused cannot “make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense.” United States v. Harris, 61 M.J. 391, 398 (C.A.A.F.2005). Similarly, the military judge cannot conduct the necessary providence inquiry into the accused’s pleas “without exploring the impact of any potential mental health issues on those pleas.” Id.
We have addressed the question of an accused’s mental disease or defect and the providence of a guilty plea in the recent cases- of Inabinette, United States v. Glenn, 66 M.J. 64 (C.A.A.F.2008), Shaw, and Harris. A military judge can presume, in the absence of contrary circumstances, that the accused is sane and, furthermore, that counsel is competent. Shaw, 64 M.J. at 463. Should the accused’s statements or material in the record indicate a history of mental disease or defect on the part of the accused, the military judge must determine whether that information raises either a conflict with the plea and thus the possibility of a defense or only the “mere possibility” of conflict. Id. at 462 (citation and quotation marks omitted). The former requires further inquiry on the part of the military judge, the latter does not. Id. This is a contextual determination by the military judge. Id. at 464. However, we have additionally indicated that it is prudent, but we emphasize not always required, to conduct further inquiry when a significant *339 mental health issue is raised, regardless of whether a conflict has actually arisen. Id.
The question in Shaw was whether sufficient evidence of a mental disease or disorder was before the military judge so as to raise an inconsistency with Shaw’s plea and thus require the military judge to inquire further into Shaw’s mental state and advise him of the defense of lack of mental responsibility. Shaw provided an unsworn statement during sentencing stating that he had previously been diagnosed with bipolar disorder following a head injury. Id. at 461. Aside from responding to defense counsel’s questions on the issue, Shaw provided no further evidence that his condition affected his mental responsibility for his actions. Id. We determined that Shaw’s reference to his history of bipolar disorder “at most raised only the ‘mere possibility’ of a conflict with the plea,” and that therefore it was not an abuse of discretion for the military judge to accept Shaw’s plea without conducting further inquiry into his mental health. Id. at 464. In reaching that decision we considered Shaw’s history of bipolar disorder, his conduct during the plea inquiry and whether that reflected on his capacity to plead guilty, and if Shaw’s statements indicated an inability to appreciate the nature and wrongfulness of his acts as a result of his mental health issues. Id. at 462-63; see also Glenn, 66 M.J. at 66.
In Harris, which sits at the other end of the spectrum from Shaw, we found that there was sufficient basis in law and fact to question Harris’s guilty plea. 61 M.J. at 398. Harris had been convicted for passing bad checks, unauthorized absence, and larceny. Id. at 392. At trial, the military judge found that Harris understood the nature and quality and/or wrongfulness of his actions. Id. at 393. However, this Court found that, as Harris’s mental disease or defect was diagnosed only after the trial, his plea was not informed and the trial court could not have performed the necessary providence inquiry. Id. at 398-99.
While there is more here than a mere unsworn assertion, the facts of this case are still closer to Shaw than to Harris. The record of trial makes clear that neither Appellant’s conduct nor her mental health history created more than the mere possibility of conflict with her pleas. Admittedly, this case differs from Shaw in that the record reflects a diagnosis of bipolar disorder for which Appellant was being treated at the time of trial. In addition, Appellant arrived at the court-martial from the mental health facility and would return there at its conclusion. However, the record does not reflect that her bipolar disorder affected the providence of her plea. See Shaw, 64 M.J. at 462.
In the instant case, the military judge was aware of Appellant’s mental health history and made sure, as set out above, that Appellant’s mental condition, current treatment, and competency to stand trial did not put the providence of her plea at issue. He specifically asked her about her mental responsibility at the time the offenses were committed, ensuring that at the time of her offenses she understood both what she was doing and the difference between right and wrong. In addition, during Appellant’s unsworn statement trial defense counsel repeated the inquiry into Appellant’s mental responsibility for her acts. The military judge placed his impressions of Appellant’s behavior at trial on the record and repeated those observations as to Appellant’s mental acuity following sentencing. He found that she was “fully cognizant of everything that happened today,” as well as “alert,” “articulate,” and that she appeared to “completely understand the nature and quality of these proceedings.” Finally, the “Report of Mental Status Evaluation” found Appellant “mentally responsible.” Unlike Harris, or United States v. Martin, 56 M.J. 97 (C.A.A.F.2001), this is not a case in which there were conflicting evaluations of Appellant’s mental responsibility. There was no evidence of record that Appellant lacked mental responsibility at the time the offenses were committed.
Given these facts, we cannot say that the military judge was required to explain or discuss the defense of lack of mental responsibility with Appellant. Appellant appeared competent and responsible before the military judge, she claimed she was competent and responsible at the time of the offenses, her counsel agreed that she was competent *340 and responsible at that time, and the mental status evaluation stated that she “was responsible.” Moreover, no evidence exists to suggest that Appellant did not understand the nature and quality or the wrongfulness of her actions when committing the offenses. The evidence before the military judge presented only the mere possibility of conflict with Appellant’s guilty plea and did not raise a substantial basis in law or fact for questioning the providence of that plea.
III. Conclusion
For the reasons set forth above, the decision of United States Army Court of Criminal Appeals is affirmed.