UNITED STATES ARMY COURT OF CRIMINAL APPEALS

 Before
 JOHNSON, BAIME, and BURTON
 Appellate Military Judges

 UNITED STATES, Appellee
 v.
 Private E1 DAVID ANTAR
 United States Army, Appellant

 ARMY 20080836

For Appellant: Major Daniel E. Goldman, JA (argued); Colonel Mark
Tellitocci, JA; Lieutenant Colonel Imogene M. Jamison, JA; Lieutenant
Colonel Jonathan F. Potter, JA; Major Laura A. Kesler, JA; Captain Brent A.
Goodwin, JA; Major Daniel E. Goldman, JA (on brief).

For Appellee: Major Adam S. Kazin, JA (argued); Colonel Michael E.
Mulligan, JA; Major Amber J. Williams, JA; Major Adam S. Kazin, JA (on
brief).

 15 April 2011

 ----------------------------------------------------
 SUMMARY DISPOSITION ON REMAND
 ----------------------------------------------------

BURTON, Judge:

 On 18 September 2008, a military judge sitting as a special court-
martial convicted appellant, pursuant to his pleas, of absence without
leave (AWOL), wrongful use of a controlled substance (two specifications),
wrongful possession of a controlled substance, and possession of drug
paraphernalia, in violation of Articles 86, 112a, and 134, Uniform Code of
Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886, 912a, and 834
(2008). The convening authority approved the adjudged sentence to
confinement for 120 days and a bad-conduct discharge. The convening
authority credited appellant with 87 days of confinement.

 On 22 January 2010, following our initial review pursuant to Article
66, UCMJ, this court affirmed the findings and sentence.

 On 8 June 2010, the United States Court of Appeals for the Armed
Forces granted appellant’s petition on the following issue:

 WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT’S PLEA
 OF GUILTY AND NOT REOPENING THE PROVIDENCE INQUIRY WITHOUT
 QUESTIONING BOTH APPELLANT AND HIS TRIAL DEFENSE COUNSEL
 REGARDING APPELLANT’S BIPOLAR DISORDER, HIS EXTENSIVE HISTORY OF
 PSYCHIATRIC DISORDERS, AND POSSIBLE MENTAL RESPONSIBILTY
 DEFENSE.

 On 8 June 2010, the United States Court of Appeals for the Armed
Forces set aside our 22 January 2010 decision and returned the record of
trial to the Judge Advocate General of the United States Army for remand to
our court for reconsideration of the aforementioned issue in light of
United States v. Harris, 61 M.J. 391 (C.A.A.F. 2005).

 On 9 July 2010, this court ordered an inquiry pursuant to Rule for
Courts-Martial (R.C.M.) 706 to assess appellant’s mental state beginning
with his misconduct through the present appellate process. On 16 November
2010, this court granted the government’s motion to attach Government
Appellate Exhibit (GAE) 1, a memorandum containing the board’s findings and
conclusions. The board concluded that appellant, at the time of his
criminal conduct, did suffer from a severe mental disease or defect.

 Following the government’s submission of GAE 1 to this court, both
parties submitted additional pleadings and we heard oral argument on the
above granted issue.[1]

 While the R.C.M. 706 board report concluded that appellant’s condition
did not preclude appellant from appreciating the nature and quality or
wrongfulness of his conduct or understanding the nature of the proceedings
against him and cooperating in his defense at trial, those conclusions by
themselves do not permit us to simply affirm the findings and sentence. As
our superior court noted in Harris:

 We do not see how an accused can make an informed plea without
 knowledge that he suffered a mental disease or defect at the
 time of the offense. Nor is it possible for a military judge to
 conduct the necessary Care inquiry into an accused’s pleas
 without exploring the impact of any potential mental health
 issues on those pleas.

Id.

 Based on the unique facts of this case, and in light of our superior
court’s directive to reconsider our review of appellant’s assignment of
error under United States v. Harris, we conclude that there is a
substantial basis in law and fact to question appellant’s guilty plea.

 CONCLUSION

 The findings of guilty and the sentence are set aside. A rehearing
may be ordered by the same or a different convening authority. All rights,
privileges, and property, of which appellant has been deprived by virtue of
his sentence being set aside by this decision, are ordered restored. See
UCMJ, arts. 58b(c) and 75(a).

 Senior Judge JOHNSON concurs.

 BAIME, Judge, dissenting:

 I cannot share my fellow judges’ myopic view of this case. To do so
fails to acknowledge the plethora of other military jurisprudence,
including cases CAAF decided after United States v. Harris[2] in 2005 that
are more relevant to the facts of the current case than Harris. Thus, I
respectfully dissent.

 LAW

 “A guilty plea will be rejected only where the record of trial shows a
substantial basis in law and fact for questioning the plea.” Harris, 61
M.J. at 398 (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.
1991)). A guilty plea waives a number of an accused’s constitutional
rights. Id. (citing United States v. Care, 18 C.M.A. 535, 541-42 (1969).
As a result, any waiver of such rights must be informed. Id. (citing
United States v. Hansen, 59 M.J. 410, 413 (C.A.A.F. 2004).

 “[T]he military judge may reasonably rely on both a presumption that
the accused is sane and the long-standing principle that counsel is
presumed to be competent.” United States v. Shaw, 64 M.J. 460, 463
(C.A.A.F. 2007) (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).

 Additionally, United States v. Riddle, 67 M.J. 335 (C.A.A.F. 2009), is
particularly informative. Citing Harris, 61 M.J. 338-39, the CAAF
emphasized the outcome in Harris turned on the fact that the Harris
appellant did not make an informed plea because his “mental disease or
defect was diagnosed only after the trial,” and “the trial court could not
have performed the necessary providency inquiry.” Riddle, 67 M.J. at 339.

 ANALYSIS

 I am convinced beyond any shadow of a doubt appellant, at the time of
his trial, knew he suffered from a mental disease or defect. This is
demonstrated numerous times in the record. First, prior to the command
taking any action against appellant, on 13 May 2008, a licensed
psychologist at the Community Mental Health Services completed a Department
of the Army (DA) Form 3822-R, Report of Mental Status Evaluation,
concerning appellant. In this document, which was included as an
attachment to the stipulation of fact entered into between appellant and
the government at trial, the Health Service Psychologist specifically found
“The Service Member does have a severe mental disorder.”[3] The
psychologist concluded appellant met the “psychiatric criteria for ROUTINE
administrative separation” and was “psychiatrically cleared for any action
deemed appropriate by Command.” (sic). Second, during his unsworn
statement, appellant stated he was diagnosed as being bi-polar. Third, as
part of his presentencing case, appellant submitted Defense Exhibits (DE) A
and B, voluminous documentation from his parents about his previous mental
illnesses, including chemical dependency and his multiple attempts at
rehabilitation. In DE B, his father wrote appellant “was diagnosed with
Bipolar Disorder” in 1994.

 During oral argument,[4] appellate defense counsel made it extremely
clear appellant was not alleging his trial defense counsel were ineffective
or did anything inappropriate. I see no reason to disagree with this
conclusion. Thus, I am faced with a situation where an appellant went to
trial knowing he suffered from a severe mental disease or defect, as
demonstrated in the prior paragraph. Also, appellant was represented by
two attorneys presumed to have been competent and to have completed a
thorough investigation of appellant’s case and all possible and probable
defenses. Although appellant suffered from bi-polar disorder and other
mental diseases, he is presumed to be sane and still able to participate in
his defense. Nothing in the trial or appellate records suggests appellant
made anything but a conscientious and fully informed decision to utilize
his mental disease as extenuation and mitigation evidence. Also, in the
stipulation of fact, appellant disclaimed any potential defenses, agreeing
that he “had no legal justification, authorization or defense to the
offenses to which he has entered a plea of guilty.” I believe appellant
intended to show he was less culpable, but still responsible for his
criminal misconduct.

 When deciding this case, while I must consider Harris, I have a
judicial obligation to also consider the other relevant military
jurisprudence. Thus, in addition to considering Harris, we also need to
evaluate appellant’s case in light of other relevant case law.

 Harris concerned a petition for new trial based upon newly discovered
evidence, after conclusion of appellant’s court-martial, that Harris
suffered from a severe mental disease or defect. The seminal language from
Harris as it relates to appellant’s case is, “We do not see how an accused
can make an informed plea without knowledge that he suffered a severe
mental disease or defect at the time of the offense.” Harris, 61 M.J. at
398.

 The facts of Shaw much more closely resemble the case sub judice than
the facts of Harris. In Shaw, which was decided after Harris, the accused
made an unsworn statement stating he was diagnosed with “bi-polar
syndrome.” Shaw, 64 M.J. at 461. Like the case at bar, the military judge
failed to inquire into appellant’s statement regarding his bi-polar
disorder.[5] In Shaw, the CAAF found this at most raised the “mere
possibility” of a conflict with appellant’s plea and the military judge had
not abused his discretion in not conducting a further inquiry. Shaw, 64
M.J. at 464. I conclude appellant’s unsworn statement and mental health
history at most raised the mere possibility of a conflict with a plea, and
further inquiry was not required.

 After completing a thorough review of appellant’s case and all
relevant military jurisprudence, I am convinced we were correct when we
affirmed appellant’s findings and sentence on 22 January 2010. Appellant
and his counsel were aware appellant had a severe mental disease or
disorder and made “an informed plea” of guilty. They also made a strategic
decision to use that evidence for extenuation and mitigation purposes.
“The evidence before the military judge presented only the mere possibility
of conflict with Appellant’s guilty plea and did not raise a substantial
basis in law or fact for questioning the providence of that plea.” Riddle,
67 M.J. at 340. The military judge did not abuse his discretion by failing
to inquire about appellant’s bi-polar disorder. See Shaw, 64 M.J. at 464.

 For the above reasons, I respectfully dissent.

 FOR THE COURT:

 MALCOLM H. SQUIRES, JR.
 Clerk of Court

-----------------------
[1] On 9 February 2011, this court granted the government’s motion to
attach GAE 3, an additional memorandum, dated 7 February 2011, from the
doctor who conducted the R.C.M. 706 board. The memorandum provided some
clarifications to GAE 1.
[2] 61 M.J. 391 (C.A.A.F. 2005)
[3] The psychologist did not find appellant was bi-polar, but rather
suffered from opioid dependence. Interestingly, appellant told the
psychologist his father “has ‘bipolar’ and was ‘crazy’ growing up.”

[4] I commend both government and defense appellate counsel on their
outstanding oral arguments, which were superlative.
[5] The military judge should have asked appellant about his bi-polar
disorder. All military judges should inquire of any accused as to their
willingness and ability to plead guilty when an issue of mental
responsibility is raised through any means in a guilty plea. See Riddle,
67 M.J. at 338-39. The issue for us to decide now, though, is whether the
military judge’s failure to inquire about appellant’s bi-polar disorder
requires reversal of appellant’s conviction. This is where I disagree with
my brethren.