# United States Navy–Marine Corps Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

————————————

**UNITED STATES**
*Appellee*

**v.**

**John J. HAYS**
Hospitalman Recruit (E-1), U.S. Navy
*Appellant*

**No. 202400292**

————————————

Decided: 19 December 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Rachel E. Trest

Sentence adjudged 30 April 2024 by a general court-martial tried at Joint Base Charleston, South Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for eight months and a bad-conduct discharge.[1]

For Appellant:
*Commander Lindsay W. Pepi, JAGC, USN*

---

[1] Appellant was credited with 139 days of pretrial confinement.

For Appellee:
*Lieutenant Stephanie N. Fisher, JAGC, USN*
*Lieutenant Commander James P. Wu Zhu, JAGC, USN*

Chief Judge DALY delivered the opinion of the Court, in which Senior Judge GROSS and Judge de GROOT joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

DALY, Chief Judge:

Appellant was convicted, in accordance with his pleas, of one specification of impersonating an officer, three specifications of assault consummated by a battery, and one specification of drunk and disorderly conduct, in violation of Articles 106, 128, and 134, Uniform Code of Military Justice (UCMJ).[2]

Appellant asserts two assignments of error (AOEs): (1) whether the military judge abused her discretion in accepting Appellant's guilty pleas because there was an inadequate legal and factual basis to support the Article 106, UCMJ, charge that Appellant impersonated an officer on divers occasions in July 2023; and (2) whether trial defense counsel (TDC) were ineffective in not making the military judge aware of Appellant's mental health issues, or asking the military judge to order a new Rule for Courts-Martial (R.C.M.) 706 mental health examination because either may have provided a defense. We find no prejudicial error and affirm.

## I. BACKGROUND

*1. Appellant's prior mental health evaluation.*

Appellant received a mental health evaluation pursuant to R.C.M. 706 prior to his previous court-martial in April 2023.[3] The board determined that

---

[2] 10 U.S.C. §§ 906, 928, and 934.

[3] *United States v. Hays*, No. 202300275, 2025 CCA LEXIS 185 (N-M. Ct. Crim. App. Apr. 30, 2025) (unpublished).

Appellant possessed mental responsibility for the charged offenses and was competent to assist his counsel in his defense.[4] After Appellant was released from confinement from this prior court-martial, he reportedly committed additional misconduct. During the hearing to vacate the suspended confinement adjudged at his prior court-martial for misconduct that formed the basis of the charges before this court-martial, Appellant's mental health was offered in mitigation and extenuation.[5]

Appellant pleaded guilty at this general court-martial to the charges listed above in return for the convening authority's agreement to withdraw and dismiss two specifications of abusive sexual contact and one specification of unlawful entry. For the offenses to which Appellant was charged, he faced a maximum punishment of a dishonorable discharge, more than 16 years of confinement, and total forfeitures, though the plea agreement required the military judge to adjudge no more than 8 months confinement, no forfeitures, and a bad-conduct discharge.[6]

Appellant entered into a stipulation of fact in accordance with his plea agreement that stated that at the time of the offenses:

> he did not at any time suffer from any mental defect or disease
> that caused him to commit the offenses to which he is pleading
> guilty. He has not suffered from any mental defect or disease
> that has prevented him from knowingly, consciously, and intel-
> ligently participating in his defense and signing the pretrial
> agreement and this stipulation.[7]

Trial counsel and TDC submitted a Joint Bench Brief (Guilty Plea Inquiry) to the military judge with a summary of law and proposed plea inquiry questions tailored to Appellant's lack of memory due to alcohol intoxication for this court-martial.[8] The brief included the anticipated response to a question regarding a possible defense of lack of mental responsibility:

> An R.C.M. 706 evaluation was conducted prior to [Hospitalman
> Recruit (HR)] Hays' court-martial in April 2023, and the Board
> determined that no such defenses existed at that time in HR

---

[4] R. at 48.

[5] Appellant's Mot. to Attach, App'x B at 7-8.

[6] App. Ex. I.

[7] Stip. of Fact, Pros. Ex. 1, para. 4.

[8] App. Ex. II.

Hays' case. A copy of the short-form R.C.M. 706 report was attached in the record of that trial. However, there is no basis to believe that HR Hays suffered any medical, psychiatric, or other mental condition rendering him unable to stand trial or that might constitute a mental responsibility defense to his charge or any other charge to which HR Hays is pleading guilty today.[9]

The military judge used the brief to support the guilty plea inquiry.[10] During the inquiry TDC responded to the military judge's question: "There's no basis to believe currently that there's any ongoing or current mental health issues that would have contributed to any defense here."[11] Further, when the military judge directly asked Appellant if his TDC discussed possible defenses with him and if he wished to raise any defenses, Appellant acknowledged he had discussed the possible defenses and he did not wish to raise any.[12]

### 2. Appellant pleaded guilty to impersonating an officer.

Appellant stipulated to impersonating an officer on divers occasions by stating he was a Lieutenant.

He also entered his phone number in [a victim]'s cell phone with a contact name including the rank of "LT."

. . . On or about 20 July 2023, HR Hays returned once again to the "Epicenter" and told several Sailors, ….that he was a Lieutenant. He also texted [texted another junior Sailor] that his name was, "LT Kaloyan Jamba."

. . . .

These instances of impersonation were willful because [Appellant] knew in fact that he was a Hospitalman Recruit in paygrade E-1 at the time of the misconduct. . . . [Appellant] knew it was false to hold himself out as a Lieutenant. He had no legal justification or excuse for pretending to be a Lieutenant; therefore, his conduct was wrongful.[13]

---

[9] App. Ex. II. at 4.

[10] R. at 48.

[11] R. at 48.

[12] R. at 49.

[13] Pros. Ex. 1 at 2-3.

Appellant confirmed these details in his providence inquiry. He reviewed the investigation, witness statements, and interviews, some of which were video recorded; and he believed these statements were true.[14] The military judge ensured that Appellant was satisfied that he "received all the evidence in the possession of the prosecution pertaining to this offense, both favorable and unfavorable" to him.[15] Appellant had no doubt that he committed the offense on two or more occasions.[16] Appellant still wished to plead guilty despite his inability to recall what happened and waived any defense of intoxication or alcohol-induced amnesia.[17] The military judge went over the definition of "willful" and "wrongful" with Appellant.[18] When asked by the military judge why he thought he was willful in holding himself out as a Lieutenant after reviewing the investigation, Appellant responded, "I have never believed I was a lieutenant. I can see from the statements, that I have reviewed, that I was acting like one."[19] He confirmed with the military judge, "One action that I did, ma'am, was put a rank and fake name on somebody's phone."[20]

We granted Appellant's motion to attach the long form of Appellant's mental health evaluation from his previous general court-martial and his counsel's letter to the Vacation Hearing Officer regarding his vacation hearing.[21] Appellant's psychiatric history includes a history of mental health issues dating back to 2012 where he is consistently diagnosed with either an adjustment disorder or phase of life problems.[22] This same history included creating personas that he would use to impress people, distance himself from others or problems, or generating a more prestigious background for himself.[23] His diagnostic assessment states, "[p]ersonality disorders are pervasive and enduring. There is evidence that he experienced and displayed these symptoms before the alleged offenses, during them, and currently."[24]

---

[14] R. at 39.

[15] R. at 45.

[16] R. at 46.

[17] R. at 48.

[18] R. at 50.

[19] R. at 51.

[20] R. at 53.

[21] Appellant's Mot. to Attach, App'x A and B.

[22] Appellant's Mot. to Attach, App'x A at 6.

[23] Appellant's Mot. to Attach, App'x A at 8.

[24] Appellant's Mot. to Attach, App'x A at 10.

The forensic opinion on Appellant's competency to stand trial states, "[Appellant] understands the nature of the proceedings . . . and can cooperate in the defense of his case."[25] The forensic opinion on Appellant's mental responsibility reads:

> Voluntary intoxication or substance use disorders are not considered a severe mental disease or defect that would prevent an individual from having criminal responsibility or understanding. While intoxication may acutely hinder judgment and reliability during the period of effect, it is not considered exculpatory when assessing an individual's guilt or innocence.

> Personality Disorders have been accepted in some courts as a severe mental disease or defect; however, these have been disorders with the potential for psychotic exacerbations (i.e., Schizoid and Schizotypal Personal Disorders). [Appellant's] disorder would likely not qualify as such.[26]

The report also concludes on a charge from his prior court-martial related to modifying an identification card, "It is likely that the [Appellant's] histrionic traits would provide an internal motivation to appear younger and more desirable to peers. This motivation would not prevent an individual from understanding the wrongfulness of falsifying official documents."[27]

## II. DISCUSSION

**A. The military judge did not abuse her discretion in accepting Appellant's guilty pleas to Article 106, UCMJ.**

*1. Standard of Review*

Before accepting a plea of guilty, a military judge must conduct an inquiry and determine if there is an adequate basis in law and fact to support it.[28] We review a military judge's decision to accept a guilty plea for an abuse of discretion, but we review questions of law arising from the guilty plea—such as whether an accused's conduct constitutes an element of a crime under the

---

[25] Appellant's Mot. to Attach, App'x A at 13.

[26] Appellant's Mot. to Attach, App'x A at 13.

[27] Appellant's Mot. to Attach, App'x A at 15.

[28] *United States v. Inabinette*, 66 M.J. 320, 321-22 (C.A.A.F. 2008).

UCMJ—de novo.[29] The decision to accept a guilty plea is an abuse of discretion if it is not supported by an adequate factual basis, or if it is based on an erroneous view of the law.[30] We will overturn a military judge's decision to accept a plea only if there is "a substantial basis in law or fact for questioning the guilty plea."[31]

"An abuse of discretion occurs when there exists 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'"[32] Pursuant to Article 45, UCMJ, a guilty plea shall not be accepted if an accused, "after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea improvidently or through lack of understanding of its meaning and effect."[33] "The factual predicate [of a plea] is sufficiently established if the factual circumstances as revealed by the accused himself objectively support that plea."[34] Absent a substantial conflict between an appellant's pleas and the factual or legal circumstances supporting those pleas, appellate courts should not reverse a military judge's decision to accept a plea when the appellant admits to all the elements on the record.[35]

Under R.C.M 811(e), "[u]nless properly withdrawn or ordered stricken from the record, a stipulation of fact that has been accepted is binding on the court-martial and may not be contradicted by the parties thereto." "Because the stipulation of fact quoted above has not been withdrawn or stricken, we accept the assertions within it as true."[36]

---

[29] *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012); *Inabinette*, 66 M.J. at 322.

[30] *Inabinette*, 66 M.J. at 322.

[31] *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)).

[32] *United States v. Hayes*, 70 M.J. 454, 457 (C.A.A.F. 2012) (citing *Inabinette*, 66 M.J. at 322).

[33] 10 U.S.C § 845.

[34] *United States v. Ferguson*, 68 M.J. 431, 434 (C.A.A.F. 2010) (citation modified).

[35] *See United States v. Garcia*, 44 M.J. 496, 498-99 (C.A.A.F 1996).

[36] *United States v. Hiser*, 82 M.J. 60, 64 (C.A.A.F. 2022) (citing *United States v. Nance*, 67 M.J. 362, 363 (C.A.A.F 2009)).

*2. Discussion*

Appellant argues the military judge abused her discretion for two reasons during Appellant's guilty plea inquiry for impersonating an officer.[37] First, Appellant claims the record contains insufficient facts to support that he willingly impersonated a Navy lieutenant on more than one occasion in July as charged. Second, Appellant contends the record is legally insufficient to support the finding of guilty because the military judge added an element only required for the separate offense of impersonation of a government official without intent to defraud. We conclude that there are sufficient facts to support that Appellant impersonated an officer on divers occasions within the stipulation of fact and Appellant's answers to the military judge based on his review of the statements of witnesses (written and video) and photographs of text messages.

In reaching the conclusion that the military judge did not abuse her discretion, we find that when the military judge mistakenly read the element, "[T]hat you committed one or more acts which exercised or asserted the authority of the office you claim to have by representing to active-duty enlisted personnel that you were a lieutenant,"[38] Appellant did not plead to nor did the military judge find Appellant guilty of an additional element; the plea was provident.[39]

As the Court of Appeals for the Armed Forces admonished in *United States v. Hiser*,[40] Appellant must not conflate the review of a guilty plea with the review of guilty findings following a contested trial:

> When an accused has pleaded guilty, we do not review the "evidence" for legal sufficiency for the simple reason that there is no evidence when there is no trial. Instead, when the accused pleads guilty, the military judge shall "mak[e] such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). This Court's task on review, as explained above, is only to determine from any stipulated facts and the providence inquiry whether the military judge abused his or her discretion in complying with this rule. In so doing, we simply must determine whether Appellant's guilty plea has a substantial basis in law and fact.[41]

---

[37] Appellant's Brief at 20-31.

[38] R. at 22.

[39] App. Ex. I at 3; Statement of Trial Results at 2.

[40] 82 M.J. 60, 65 (C.A.A.F. 2022).

[41] *Id.* at 66.

Unlike *United States v. Redlinski*,[42] the military judge here fully explained each of the elements and defined the applicable terms (adding one superfluous sentence). Appellant asked no questions about the elements or the definitions and affirmed that his guilty plea was an admission that the elements accurately reflected his conduct based on his review of the evidence.[43] We conclude that Appellant was neither misled nor confused on the allegation. He never asked for a bill of particulars and voluntarily pleaded guilty. This is not a case where the military judge failed to instruct an appellant during a guilty plea on an essential element.[44] Rather, Appellant "knew the elements, admitted them freely, and pleaded guilty because he was guilty."[45]

Like *United States v. Ferguson*,[46] Appellant pleaded guilty and did not contest the Government's theory of the case. Had he done so, the prosecution would have been required to prove each of the elements beyond a reasonable doubt. Specifically, Appellant could have challenged the case against him but instead admitted his guilt, and his admissions objectively supported his plea in satisfaction of the charged elements to impersonating an officer. The stipulation of fact indicated that Appellant impersonated an officer on divers occasions.[47] During the inquiry, Appellant further agreed with the military judge that he reviewed the evidence and believed it to be true.[48]

By pleading guilty, Appellant relinquished his right to contest the allegation, unless the record discloses matters inconsistent with the plea. Here, the record does not disclose any such inconsistent matter. Again, *Hiser* provides,"[g]iven that this appeal arises from a guilty plea, we need not settle all possible questions in order to assess Appellant's argument. Instead, based on the applicable standards of review, we need only determine whether the military judge had a substantial basis in law and fact" to make her conclusion.[49]

The military judge had a substantial basis in law and fact for concluding Appellant was guilty. We find there is not a substantial basis in law and fact to question his plea, and we reject this assignment of error.

---

[42] 58 M.J. 117 (C.A.A.F. 2003).

[43] R. at 22-24.

[44] *See United States v. Schell*, 72 M.J. 339, 346 (C.A.A.F. 2013).

[45] *United States v. Jones*, 34 M.J. 270, 272 (C.M.A. 1992).

[46] 68 M.J. 431 (C.A.A.F 2010).

[47] Pros. Ex. 1 at 2.

[48] R. at 46.

[49] *Hiser,* 82 M.J. 60, 68 (C.A.A.F. 2022).

## B. Appellant's TDC were not ineffective.

Appellant asserts that his TDC were ineffective because TDC knew of Appellant's mental health issues from his vacation hearing and prior mental health examination results, but did not make the military judge aware of specifics within the report, or ask the military judge to order a new mental health examination.[50] In support of this claim, Appellant offers his previous mental health evaluation and TDC's submission to the Vacation Hearing Officer.[51]

Our published opinion in *United States v. McNulty*[52] provides the legal framework and requirements on (1) the capacity to stand trial and the military mental responsibility defense and (2) ineffective assistance of counsel claims within the context of guilty plea cases:

> *1. Capacity to Stand Trial and the Military Mental Responsibility Defense.*
>
> In the military, no person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against them or to conduct or cooperate intelligently in the defense of the case. Mental capacity is presumed unless the contrary is established by a preponderance of the evidence.
>
> Relatedly, the affirmative defense of lack of mental responsibility requires the accused to prove by clear and convincing evidence, that at the time of the offense, (1) the accused suffered from a severe mental disease or defect, and (2) as a result of that mental disease or defect, the accused was unable to appreciate either (a) the nature and quality of his acts, or (b) the wrongfulness of his acts.
>
> Mental disease or defect does not otherwise constitute a defense. The insanity defense is unusual among affirmative defenses in that it is currently one of the only two defenses under the UCMJ for which the accused, not the Government, bears the burden of proof at trial. The burden never shifts back to the Government to prove sanity beyond a reasonable doubt.

---

[50] Appellant's Brief at 32-42.

[51] Appellant's Mot. to Attach, App'x B at 7-8.

[52] 84 M.J. 628, 632 (N-M. Ct. Crim. App. 2024) (quoting R.C.M. 909(a)).

Military courts have long given preferential treatment to the question of mental responsibility of a military member, even though the matter was not litigated at trial. And it is the responsibility of all involved in the court-martial process to bring to the attention of the convening authority or military judge any condition or behavior that may reasonably call into question the mental responsibility or competence of an accused.

This remains true when an accused pleads guilty, as in this case. While a military judge can presume, in the absence of evidence to the contrary, both that the accused is sane and that defense counsel is competent, if the accused's statements or other material in the record indicate a history of mental disease or defect, the military judge must determine whether that information raises either a conflict with the plea or only the mere possibility of the insanity defense.

*2. Ineffective Assistance of Counsel in the Context of a Guilty Plea.*

To establish a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient and (2) that the deficiency caused prejudice. Surmounting *Strickland's* high bar is never an easy task. Ineffectiveness of counsel claims may be resolved on either prong. With respect to the first prong of this test, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; and as to the second prong, a challenger must demonstrate a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different.

The *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] test applies in the context of guilty pleas where an appellant challenges the plea based on the ineffective assistance of counsel. To satisfy the prejudice prong of *Strickland* in a guilty plea case, the defense must also show specifically that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. In proving *Strickland* prejudice within the context of trial defense counsel's failure to fully investigate an accused's mental capacity, an appellant must show only a reasonable probability that he was either insane at the time of the offense or incompetent at the time of trial.

11

> A reasonable probability is a probability sufficient to under-
> mine confidence in the outcome. That requires a substantial, not
> just conceivable, likelihood of a different result.[53]

Appellant submitted his long form mental health evaluation along with ev-
idence of his struggle to get medication after his release from confinement from
his previous general court-martial. "[W]e must first consider whether 'the al-
legation and the record contain evidence which, if unrebutted, would overcome
the presumption of competence.' If this threshold is met, we must then compel
the defense counsel to explain their actions."[54]

*3. Appellant's Counsel Were not Deficient and There is no Reasonable Prob-
ability that Appellant Would Have Pleaded Not Guilty.*

> This Court has held that R.C.M. 706's standard to warrant
> further inquiry into the mental capacity or mental responsibility
> of an accused—reason to believe that the accused lacked mental
> responsibility for any offense charged—is very low. But the pur-
> pose of the R.C.M. 706 sanity board is to determine if an accused
> lacks capacity to stand trial or lacked mental responsibility for
> any offense charged. Thus, trial participants must only alert a
> military judge to any condition or behavior that may *reasonably*
> call into question the mental responsibility or competence of an
> accused.

> In [*United States v. ]Nelson*, this Court set aside a conviction
> due to ineffective assistance of counsel where [TDC] failed to re-
> quest an R.C.M. 706 inquiry even though counsel was confronted
> with the accused's extensive psychiatric treatment . . . increas-
> ingly erratic, manic behavior and both a diagnosis of bipolar dis-
> order and a family history of the disease. Importantly, our supe-
> rior court has repeatedly concluded that bipolar disorder may
> exist with enough severity to raise a substantial question re-
> garding the issue of the accused's mental responsibility. But not
> always.

> . . .

> But R.C.M. 706(c)(2)(A) makes clear that a severe mental
> disease or defect does not include minor disorders such as
> nonpsychotic behavior disorders and personality defects. Thus,

---

[53] *Id.* at 632-34 (citation modified).

[54] *Id.* at 634 (quoting *United States v. Melson*, 66 M.J. 346, 350 (C.A.A.F. 2008)).

> R.C.M. 706 is narrowly targeted at "severe mental disease" most commonly, but not always, evidenced by a psychotic episode or disorder.[55]

In contrast, the medical records submitted by Appellant diagnosed him with an alcohol use disorder and other specified personality disorder (prominent borderline and histrionic trait).[56] Appellant denied "a history of suicide attempts, non-suicidal self-injury, or psychiatric hospitalization."[57] Instead, he "exhibits an unstable sense of self, a longstanding history of deceptiveness regarding his personal and social history – including name, occupation, surviving family members, marital status, impulsivity regarding sex and substance use, a preoccupation with appearing younger (to the point that he would acquire false identifying information) . . ."[58] "Personality Disorders are pervasive and enduring."[59]

Based on the record before us, which includes Appellant's motion to attach, we conclude that the failure of Appellant's TDC to request an inquiry as to Appellant sanity, or to provide additional details to the military judge about whether Appellant was incapable of assisting in his own defense, did not constitute deficient performance.[60]

Specifically, Appellant fails to show that TDC had a reason to believe Appellant had a severe mental disease at the time he committed the offense such that he was unable to appreciate the nature and quality or the wrongfulness of his acts. Appellant disavowed any mental health issue as a possible defense in his stipulation of fact, when specifically questioned by the military judge, and in the joint brief, which acknowledges his previous mental health evaluation that confirmed his mental responsibility.

---

[55] *Id.* at 634-35 (citation modified).

[56] Appellant's Mot. To Attach, App'x A at 12.

[57] Appellant's Mot. To Attach, App'x A at 6.

[58] Appellant's Mot. To Attach, App'x A at 10.

[59] Appellant's Mot. To Attach, App'x A at 10.

[60] Although not raised by Appellant, we also conclude that it is not "fairly debatable among jurists of reason," *Navarette*, 81 M.J. at 405, whether Appellant's diagnosis of other specified personality disorder renders him incapable of cooperating intelligently in these appellate proceedings.

Finally, even if we were to conclude that TDC's performance was deficient, Appellant cannot demonstrate prejudice where there is no "reasonable probability" that he was either insane at the time of the offense[s] or incompetent at the time of trial.[61]

Critically, neither Appellant nor his appellate defense counsel allege he was suffering a new, severe mental disease or defect during the offenses. The only difference in his mental health between Appellant's first and second court-martial is his difficulty in obtaining an unknown medication for anti-anxiety and depression, which he took while in confinement. Appellant fails to show how it impacted him beyond "exasperating his anxiety and sense of hopelessness and desperation about his future" but provides no nexus to the charged offenses.[62] Appellant does not report or provide any evidence to suggest he was incapable of assisting in his defense.[63]

Similar to *United States v. Riddle*, "neither Appellant's conduct nor [his] mental health history created more than the mere possibility of conflict with [his] pleas."[64] The military judge was aware of the previous mental health evaluation and knew Appellant was disclaiming a mental responsibility defense.[65] Likewise, there is no reasonable probability that but for a second mental health evaluation, the result would have been different.

It would not be rational for Appellant to give up the benefit of his plea agreement and insist on a contested court-martial that included two specifications of Article 120 and exposure to a dishonorable discharge and more than 16 years of confinement. Here, Appellant and his counsel already had the benefit of a prior R.C.M. 706 board, which demonstrated the fruitlessness of this defense. The fact that Appellant had been prescribed medication after his first court-martial and then was frustrated in refilling that prescription prior to his

---

[61] *Matthews v. State*, 596 S.E.2d 49, 51 (S.C. 2004) (citation modified); *United States v. Harris*, 61 M.J. 396 (C.A.A.F. 2005).

[62] Appellant's Mot. To Attach, App'x B, Encl. (4).

[63] Although not raised by Appellant, we also do not find TDC's performance deficient in failing to bring either Appellant's other specified personality disorder diagnosis to the attention of the military judge for purposes of extenuation and mitigation during his sentencing proceeding.

[64] 67 M.J. 335, 339 (C.A.A.F. 2009).

[65] *See United States v. Torgensen,* No. 20150356, 2016 CCA LEXIS 412 (Army Ct. Crim. App. June 22, 2016) (finding error when Appellant (1) could not recall any of the events forming the basis of the offense, (2) did not disclaim a mental responsibility defense in his stipulation of fact, and (3) the military judge was apparently unaware that an R.C.M. 706 had been conducted.)

recidivism is simply not enough to overcome the high bar set by *Strickland*. We therefore conclude that, even if TDC erred by not making the military judge aware of specifics within the prior mental health examination or asking the military judge to order a new one, there is no reasonable probability that Appellant would have pleaded not guilty.

After conducting a searching review of the record, there is no reasonable probability that a second mental health evaluation would have revealed a severe mental disease or defect contrary to the first. Therefore, we conclude Appellant's TDC were not ineffective by not requesting another R.C.M. 706 board, or bringing the specifics of Appellant's previous exam, or his struggle to acquire medication, to the military judge's attention during the guilty plea inquiry.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and that no error materially prejudicial to Appellant's substantial rights occurred.[66]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[66] Articles 59 & 66, UCMJ.